ABRAHAM FEITELBERG, Plaintiff, v. MORRIS MATUSON,
Defendant.

Municipal Court of the City of New York, Borough of Manhattan, Fifth District,
March 23, 1925.

Motor vehicles — Highway Law, § 282-e (added by Laws of 1924, chap.
534), constitutional under police power of State — action to recover
damages for injuries suffered by negligent operation of defendant's
automobile — defendant permitted third party to use automobile —
friend of third party operating automobile at time of accident —
defendant liable under statute — word "use" in statute includes
person who has actual, though not physical, control of automobile —
phrase "in the business of such owner or otherwise" not limited to
enterprise for gain.

Section 282-e of the Highway Law, as added by chapter 534 of the Laws of 1924,
making every owner of a motor vehicle liable for the death or injury to persons
or property resulting from the negligent operation of such vehicle "in the
business of such owner or otherwise, by any person legally using or operating
the same with the permission, express or implied, of such owner," is constitu-
tional under the police power inherent in the State for the protection of its
citizens and others within its borders.

Accordingly, the defendant is liable in an action to recover for damages for
injuries suffered by reason of the negligent operation of his automobile, where
it appears that he permitted a third party to use his automobile, though at the
time of the accident the said vehicle was not being operated by the third
party, but by one of his friends.

The word "use" within the meaning of the statute includes a person who has
the actual, though not physical, control of the motor vehicle, and who is con-
stituted by the owner thereof its master *ad hoc*.

Under the statute, if the owner chooses to intrust his car to another person, he
invests such person, as long as he uses the automobile, with the same authority
in regard to the management of the automobile which the owner possesses,
including the right to select the operator.

The operation of a motor vehicle "in the business of such owner or otherwise"
includes its use for profit as well as for other purposes, including health or
pleasure, and does not necessarily mean an enterprise for gain.

MOTION to dismiss the complaint in an action brought to recover
damages for injuries sustained by reason of the negligent operation
of the defendant's automobile.

*Samuel Lefkowitz,* for the plaintiff.

*William J. Nolan [Paul R. James* of counsel], for the defendant.

SPIEGELBERG, J.:

It is conceded that the defendant permitted one Mishkin to use
his car.   The accident occurred on October 25, 1924, while Mishkin
and some of his friends occupied the car.   The driver was not
Mishkin but one of his party.

If the cause of action had occurred prior to July 1, 1924, this action could not have been maintained. On that day chapter 534 of the Laws of 1924, which added section 282-e to the Highway Law, went into effect. That statute, so far as applicable, reads: " Negligence of operator other than owner attributable to owner. Every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

Innumerable cases have arisen in this and other States involving the liability of owners of automobiles for damages caused by the negligent operation thereof. Since the advent of the motor car as an important agency in our daily life, there has been a marked tendency to break away from the rigid limitation of the liability of the owner to the strict application of the doctrine of *respondeat superior*. In some States judicial legislation has attempted to abrogate the rules of the common law, especially in cases dealing with general and special employee, with deviation from route or instructions, and the so-called family car theory. Thus it has been held in a recent Connecticut case (*Stickney* v. *Epstein*, 100 Conn. 170) that where the *pater-familias* maintains a motor car for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it. The court said: " The rule rests on the broad ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his affairs and within the scope of their authority."

The justification for the rule, as stated by the court, is: " We are satisfied that the same rules of public policy and social justice which entailed former extended applications of the rule *respondeat superior* to new situations at common law, still apply, and entail its application to the situation presented in this case."

In this State the Court of Appeals declined to deviate from the common law in favor of the family car rule. In *Van Blaricom* v. *Dodgson* (220 N. Y. 111) the court says (at p. 117): " If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency."

The Legislature has now adopted the court's suggestion. The

statute makes a radical change from the common law and casts a liability upon the owner of a car far beyond the hitherto accepted theory of agency. The Legislature realized that, although a motor vehicle is not in itself a dangerous instrumentality, the potential danger thereof is very great when operated by incompetent, negligent or reckless drivers. As stated in *MacPherson* v. *Buick Motor Company* (217 N. Y. 382, 389): " If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger."

If we substitute " operated " for " made," we have the keynote of the recent legislation.

I fail to perceive how the constitutionality of this act can be questioned. It is based upon the police power which is inherent in every State for the protection of its citizens and others within its borders. This State is not the first one to pass a law subjecting the owners of automobiles to additional burdens beyond those established by the common law. In Tennessee and South Carolina statutes have been passed and held valid, which made damages due to injuries received from negligent or illegal driving a lien on the vehicle. (*Merchants & Planters Bank* v. *Brigman*, 106 S. C. 362; *Core* v. *Resha*, 140 Tenn. 408.) In Michigan a statute similar to ours has been in force since the year 1915. A prior statute was declared unconstitutional in *Daugherty* v. *Thomas* (174 Mich. 371) upon the ground that it made the owner liable for all injuries occasioned by the negligence of the driver, except where the machine was stolen. The court held that this was in violation of the due process clause of the Constitution, as it made the owner liable for the act of a mere stranger or willful trespasser, or any person not sustaining to the owner the relation of servant, agent or employee. The Michigan law of 1915 (Compiled Laws, 4825, § 29; Public Acts, 1915, 302, § 29) contains the proviso " that the owner shall not be liable unless said motor vehicle is being driven by the express or implied consent or knowledge of such owner." That statute was held to be constitutional in *Stapleton* v. *Independent Brewing Company* (198 Mich. 170), which case was followed in *Hatter* v. *Dodge Brothers* (202 id. 97) and *Rohrer* v. *Schreiber* (223 id. 355). And in *Hawkins* v. *Ermatinger* (211 id. 578) the provision of the statute declaring that the consent of the owner of a car to its use will be conclusively presumed when the same is driven by an immediate member of his family, was held constitutional as within the police power of the State.

The defendant also claims that the plaintiff cannot recover for the reason that the person to whom the car was loaned did not drive the car. The statute says, however, that the owner

shall be liable for the acts of any person legally " using or operating the same." The words are used disjunctively. The Legislature drew a distinction between " using " and " operating." To operate, as distinguished from use, signifies a personal act in working the mechanism of the car. (*Witherstine* v. *Employers' Liability Assurance Corporation*, 235 N. Y. 168, 172.) As there stated: " The driver operates the car for the owner, but the owner does not operate the car unless he drives it himself." What was the purpose of adding the word " use " unless it was meant to include the person who had the actual, though not physical, control of the car, and who was constituted by the owner its master *ad hoc.* If the liability of the owner were limited to the acts of the operator, the statute would become a dead letter in most cases. Its evasion would be an easy matter. The statute must be interpreted in harmony with its verbiage. We cannot hold that " using " and " operating " are interchangeable or synonymous words. If the owner chooses to intrust his car to another person, he invests such person, so long as he uses the car, with the same authority in regard to the management of the car which the owner has. That authority includes the right to select the operator. The statute so provides in unmistakable language. Of course, the liability of the owner ceases when the borrower, in turn, gives the use of the car to a third party without the owner's consent. It is significant that throughout the Motor Vehicle Law, which constitutes article 11 of the Highway Law, the word " use " is employed only in this connection.

Nor can it be claimed that the car was not used " in the business of such owner or otherwise." It will not do to give these words the restricted meaning which was tentatively suggested by an eminent author in a recent article (Automobiles and Vicarious Liability, by Joseph P. Chamberlain, in volume 10, American Bar Association Journal, 788). It is there said: " It may be possible for the court to seize on the clause ' in the business of such owner or otherwise ' to limit the operation of the statute to chauffeurs employed in a business and to argue that the words ' and otherwise ' were intended to clear up the doubt cast by the decisions as to whether the owner of the business was liable for all accidents occurring while the motor car was being driven by one of his employees, whether or not the accident occurred under such conditions that the driver could be clearly said to be in the scope of his employment."

The words " or otherwise " are in enlargement of, and not in restriction to, the meaning of " business." But, disregarding the additional words, " business " does not necessarily mean an affair

for gain or an occupation for profit. Its primary meaning is a matter that engages a person's attention or requires his care. (Cent. Dict.) The operator of a car "in the business of such owner" includes its use for profit as well as for other purposes such as health or pleasure. Judicial sanction is not wanting. Thus, interpreting a statute (which has since been repealed) which made the owner of a family car liable for negligent acts of a member of the family "in the performance of such owner's business," it was held in *Wolf* v. *Sulik* (93 Conn. 431) that that phrase includes a vehicle driven for pleasure as well as for profit. In *Griffin* v. *Russell* (144 Ga. 275), in a case involving the liability of an owner of an automobile, the court says (at p. 278): "The word 'business' is commonly employed in connection with an occupation for livelihood or profit, but it is not limited to such pursuits. When Jesus said, 'Wist ye not that I must be about my Father's business?' He had no reference to matters involving pecuniary rewards."

It is not within the scope of this opinion to indulge in conjectures of the far-reaching effects of the statute or its applicability under a state of facts easily conceivable but not present in this case. In my opinion, the complaint upon the concessions herein sets forth a cause of action and, therefore, the motion to dismiss the complaint is denied.